The PEOPLE of the State of Colorado, Petitioner-Appellee,

In the Interest of A.H., A Child,

And Concerning: L.H., Respondent-Appellant.

No. 86CA0141.

Colorado Court of Appeals, Div. I.

March 12, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Timothy Nelson, Asst. Attys. Gen., Denver, for petitioner-appellee.

Fossum, Hatter & Green, P.C., James Hatter, Cortez, for respondent-appellant.

METZGER, Judge.

L.H. (father) appeals the trial court order terminating the parent-child relationship between him and his daughter, A.H. He contends that the treatment plan adopted by the trial court was inappropriate and that the trial court failed to consider less drastic alternatives to termination. He also asserts that the trial court erred in finding that an appropriate treatment plan could not be devised. We find no error and, therefore, affirm.

Intervention into the family was first necessitated in 1977 when father left A.H. and her two brothers unsupervised for several hours on the front steps of a bar in Dolores, Colorado. Between 1977 and 1983, eight complaints concerning father's care of the children were made to the Department of Social Services (department). Each was resolved after intervention by and assistance from the department. However, a complaint made in October 1984 concerning A.H. resulted in her removal from the home and placement in foster care.

In December 1984, father admitted the allegations of a petition in dependency and neglect, and A.H. was adjudicated dependent and neglected. At a dispositional hearing on April 2, 1985, the proposed treatment plan was modified upon father's request, then adopted by the trial court. The plan focused upon father's inability to maintain a clean home and clean clothing for A.H., his inability to manage financial affairs, and his history of severe alcohol abuse.

Shortly afterwards, father ceased any contact with the department, and in June 1985, he and his sons moved to Arkansas.

Thereafter, a motion for termination of the parent-child legal relationship pursuant to § 19–11–105(1)(b), C.R.S. (1986 Repl.Vol. 8B) was filed, and an order terminating father's legal relationship with A.H. was entered in December 1985. One of the trial court's findings provided that: "Even though the treatment plan was deficient in that it did not deal with the problems of sexual abuse, under the facts, no treatment plan could be devised".

## I.

Father contends that the trial court's finding, that no treatment plan could be devised, requires reversal of the termination order. We disagree.

To terminate a parent-child legal relationship under § 19–11–105(1)(b), C.R.S. (1986 Repl.Vol. 8B), the trial court must find that an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful, that the parent is unfit, and that the parent's conduct or condition is unlikely to change within a reasonable time. Under this provision, the trial court must adopt a treatment plan even though its likelihood of success may be slight. *See People In Interest of M.C.C.*, 641 P.2d 306 (Colo.App.1982). Accordingly, termination of parental rights under § 19–11–105(1)(b), C.R.S. (1986 Repl.Vol. 8B) cannot be based upon a finding that an appropriate treatment plan cannot be devised. *See People In Interest of M.C.C., supra; but see People In Interest of M.M.*, 726 P.2d 1108 (Colo.1986); §§ 19–11–105(1)(a), 19–3–111(1)(e)(I), and 19–3–111(3)(a), C.R.S. (1986 Repl.Vol. 8B).

Nevertheless, when an order is ambiguous, the task of the reviewing court is to determine what the trial court intended in issuing the order. To resolve an ambiguity, it is appropriate to refer to the entire record and to the circumstances surrounding the order. *Blecker v. Kofoed,* 672 P.2d 526 (Colo.1983).

Here, the trial court's lengthy and well-reasoned order includes 23 separate paragraphs of findings, some with sub-sections. Viewing that order in its entirety, coupled with our review of the record, we conclude that the ambiguous paragraph in question represented the trial court's assessment of the difficulty in devising a treatment plan to address and resolve the problems of alleged sexual abuse of A.H. by her brothers.

The other portions of the order meticulously detail father's total inability to provide even minimal care for his daughter. They recite his continuous and ongoing alcohol abuse, his failure to respond to contacts initiated by the department, his lack of financial responsibility, and his refusal to obtain adequate housing, culminating in June 1985, when he left town and moved to Arkansas, without any notification to his caseworker, the court, the department, or his daughter. Consequently, because the trial court's order, when read in its entirety, complies fully with § 19–11–105(1)(b), C.R.S. (1986 Repl.Vol. 8B) in its recitation of the myriad justifications for termination based on the failure of the treatment plan, we reject father's assertions that the ambiguity in the paragraph in question constitutes a fatal defect justifying reversal.

## II.

Father next argues that the treatment plan was inappropriate because it failed to address allegations of sexual abuse and to establish reasonable goals, or means to obtain them, with respect to his alcohol abuse. We disagree.

The appropriateness of a treatment plan must be measured by its likelihood of success in reuniting the family. *People In Interest of M.M., supra; People In Interest of B.J.D.,* 626 P.2d 727 (Colo.App.1981); § 19–3–111(1)(e)(II), C.R.S. (1986 Repl.Vol. 8B). Appropriateness is not nullified by the ultimate failure of a treatment plan so long as its requirements were realistic in light of the facts existing at the time it was adopted. *See People In Interest of M.M., supra; People In Interest of C.L.I.,* 710 P.2d 1183 (Colo.App.1985).

There were unsubstantiated allegations that A.H. had been sexually abused

by her brothers at the time the treatment plan was adopted. Throughout the proceedings, however, father denied these allegations. He failed either to object to the treatment plan on this basis at the time of its adoption or to seek amendment of the plan to include provisions addressing sexual abuse. *See People In Interest of M.P.*, 690 P.2d 1300 (Colo.App.1984). Moreover, because the treatment plan focused on father's alcoholism and failure to provide even rudimentary care and supervision, and because the alleged sexual abuse resulted from this failure, the omission of specific provisions concerning sexual abuse did not render the treatment plan unreasonable or inappropriate. *See People In Interest of M.M., supra; People In Interest of C.L.I., supra; People in Interest of M.P., supra.*

■ We also reject father's assertion that the treatment plan failed to address adequately his alcohol problem. The plan required father to undergo urinalysis on a regular basis, to submit written reports and recommendations for further treatment from his alcohol counselor, and to maintain permanent sobriety. It was father's responsibility to assure compliance with, and the success of, these provisions by obtaining the recommended intensive treatment necessary to overcome his alcohol dependency. *See People in Interest of M.M., supra.* Since he failed to do so, he cannot be heard to complain that his lack of success was rooted in the treatment plan rather than in his own behavior.

### III.

■ We also reject father's contention that the trial court erred in failing to consider alternatives other than termination of the parent-child relationship before reaching its decision.

In *People in Interest of M.M., supra,* our supreme court urged trial courts to enter specific findings on less drastic alternatives to termination. However, it went on to hold: "[W]e are satisfied that as long as the trial court's findings conform to the statutory criteria for termination and are adequately supported by evidence in the record, a reviewing court may reasonably presume that, in the absence of any indication in the record to the contrary, the trial court considered and eliminated less drastic alternatives."

Here, the trial court specifically found that: "[T]he condition of [father], renders him incapable of giving the child reasonable parental care...." It further found that: "[T]he continuation of the parent-child relationship is likely to result in great risks or serious injury to the minor child and such injury can be either emotional, physical, or both."

The record fully supports these findings and contains no contrary indication. Additionally, after a review of the record, we are at a loss to ascertain what, if any, lesser measures could have been taken by the trial court.

At the time A.H. was adjudicated dependent and neglected, she was 12 years old. Her condition, both physical and emotional, could charitably be described as pitiful. She had no knowledge of the rudiments of personal hygiene, and was not toilet trained. She was often truant, and when she did appear at school she was dressed in filthy rags. She had lost only four of her baby teeth, and her permanent teeth were growing sideways in her jaw. She had impaired vision, but had not worn glasses for some time because father refused to replace the pair she had lost. She was malnourished, had open sores on her head, and had lost much of her hair as a result of a scalp infection. She had a serious infection as a result of alleged sexual abuse by both of her brothers and by male visitors to her father's home. She refused to speak, and communicated only in writing. Her academic level was well below that of other children her age.

At the time the trial court entered its order terminating the parent-child relationship, A.H.'s physical condition had improved markedly because of the remarkable care, patience, and nurturance of her foster family, particularly her foster mother who was also her teacher. A.H.'s emotional condition had also improved somewhat, but she continued to suffer severe emotional problems. The father had

moved to Arkansas, had no intention of returning to Colorado, and testified that he was unable to care for his daughter and felt she should remain in her foster home. He conceded that he was an unfit parent.

Consequently, we conclude that the evidence reflected, beyond any reasonable doubt, the correctness of the trial court's determination that a continuation of the parent-child legal relationship between father and A.H. would result in great risk or serious injury to A.H., and that that injury could be either emotional, physical, or both.

The order is affirmed.

PIERCE and KELLY, JJ., concur.