24CA1970 Peo in Interest of AC 04-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1970
Delta County District Court No. 23JV30008
Honorable Steven L. Schultz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.C., a Child,

and Concerning E.M. and R.C.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

---

John F. Baier, County Attorney, Adriana Hartley, Assistant County Attorney, Delta, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant E.M.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant R.C.

¶ 1    In this dependency and neglect proceeding, E.M. (mother) and R.C. (father) appeal the judgment terminating their parent-child legal relationships with A.C. (the child). We affirm.

## I.    Background

¶ 2    The Delta County Department of Human Services (the Department) filed a petition in dependency and neglect raising concerns about substance use and lack of supervision.

¶ 3    The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents. Among other things, the parents' treatment plans required them to (1) maintain a drug-free lifestyle; (2) cooperate with the Department; (3) meet the child's needs; (4) maintain a safe and stable home; (5) address all mental health concerns; and (6) refrain from engaging in criminal activity.

¶ 4    The Department later moved to terminate both mother's and father's parental rights. The juvenile court continued the termination hearing for six months, in part to allow mother additional time to comply with her treatment plan. Following the termination hearing, the juvenile court granted the motion and terminated mother's and father's parental rights.

## II.    Reasonable Efforts

¶ 5    Both parents contend that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them and reunify their family.  We disagree.

### A.    Preservation

¶ 6    The Department and the guardian ad litem dispute preservation, asserting that the parents didn't challenge the reasonableness of the Department's efforts before the termination hearing.  *Compare People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services before the termination hearing), *with People in Interest of S.N-V.*, 300 P.3d 911, 914-18 (Colo. App. 2011) (holding that a parent's failure to object to services doesn't bar appellate review of a reasonable efforts finding).  However, we need not determine whether the parents preserved their arguments, or were required to, because even if we assume they did, we discern no basis for reversal.

### B.    Applicable Law and Standard of Review

¶ 7    In deciding whether to terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the juvenile court must consider

whether the county department of human services made reasonable efforts to rehabilitate the parents and reunite them with the child. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and care" to reunify parents with their children. § 19-1-103(114). Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 8 Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b).

¶ 9 In assessing a department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But the parent is

ultimately responsible for using the services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). The court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 10 Whether a department satisfied its obligation to make reasonable efforts to rehabilitate a parent and reunify the family is a mixed question of law and fact. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination as to whether the department satisfied its reasonable efforts obligation. *Id.*

### C. Analysis

¶ 11 The juvenile court rejected the parents' suggestion that a lack of reasonable efforts contributed to their failure to comply with their treatment plans. The court specifically concluded that the Department "made every possible effort to rehabilitate [the parents] to no avail." The record supports this finding.

4

## 1. Reasonable Efforts as to Mother

¶ 12    Mother argues that the Department didn't facilitate family time for the three months immediately preceding the termination hearing.

¶ 13    The record shows that family time was set up and remained in place for the duration of the case.  However, according to the policy of the family time provider incorporated into the visitation order, family time would be suspended if a parent missed three visits, at least until the parent reengaged or spoke to the caseworker.  Generally, mother's visits were sporadic but fairly continual until the last few months of the case.

¶ 14    Three months before the termination hearing, mother was incarcerated and unable to engage in family time.  Mother was released approximately two months before the hearing, but she didn't seek to resume her visits.

¶ 15    Mother asserts that it was the Department's obligation to contact her to resume visits.  But the caseworker didn't have mother's phone number or know where she was residing.  Additionally, in the two months between her release and the termination hearing, mother failed to contact the caseworker.  The

5

caseworker testified that, had she been able to communicate with mother, she would have reinstated her family time. Thus, the record reflects that it was mother's failure to contact the caseworker after her release from custody, not the Department's failure to arrange or provide family time services, that led to the lack of family time immediately preceding termination. *See J.C.R.,* 259 P.3d at 1285.

¶ 16 Other than this lack of family time, mother doesn't identify any services or referrals she needed that the Department failed to provide.

### 2. Reasonable Efforts as to Father

¶ 17 Father argues that the Department failed to properly locate and communicate with him, which resulted in a failure to provide him with vital services under section 19-3-208(2)(b). He relies on the caseworker's testimony regarding her attempts to locate and communicate with him. While we agree that it is generally helpful for a caseworker to have regular contact with a parent, nothing in section 19-3-208 requires that a caseworker meet with a parent a certain number of times throughout the case, nor does it delineate

the methods a caseworker must use to attempt communication with a parent.

¶ 18     Father asserts that the Department's lack of reasonable efforts led to his lack of progress and attendance at treatment and services.  But he doesn't explain how additional communication with the caseworker, on its own, would have helped rehabilitate him or reunify the family.  Even so, the caseworker testified that she (1) met with father approximately three or four times; (2) went over the treatment plan with father; (3) explained that father needed to be engaged in services; and (4) sent out referrals and instructed father how to engage in those services.  Father testified that he was aware of the referrals but didn't engage because it was "hard to make time" and he was "lazy."  *See People in Interest of A.H.*, 736 P.2d 425, 428 (Colo. App. 1987) (the parent bears responsibility to assure compliance with, and the success of, treatment plan objectives).

¶ 19     Moreover, we aren't persuaded by father's argument that the Department unilaterally restricted his family time.  In particular, father contends that the caseworker reduced the length of his visits from two hours to one hour.

¶ 20 The juvenile court's family time order allowed each parent a minimum of one hour of supervised visitation per week. While there were times when father also attended mother's one-hour visits, thus receiving two full hours in a one-week period, the visitation order was never modified. At one point during the case, father's visits were suspended for lack of consistent attendance. When family time was reinstated, it was for one hour per week as ordered. Father confirmed that his visits were scheduled for one hour. Thus, there was no "restriction" of father's family time as contemplated by 19-3-217(3), C.R.S. 2024.

¶ 21 Accordingly, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate the parents and reunite them with the child.

### III. Disposition

¶ 22 We affirm the judgment.

JUDGE FREYRE and JUDGE SCHOCK concur.