24CA2241 Peo in Interest of TF 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2241
Weld County District Court No. 23JV24
Honorable Anita Crowther, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of T.F., a Child,

and Concerning R.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE HAWTHORNE*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Sandra K. Owens, Guardian Ad Litem, for T.F.

Reinaldo B. Valenzuela, Counsel for Youth, Loveland, Colorado, for T.F.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    R.L. (mother) appeals the judgment terminating her parent-child legal relationship with T.F. (the youth).  We affirm.

## I.    Background

¶ 2    The Weld County Department of Human Services filed a petition in dependency or neglect alleging that father had sexually abused the then fourteen-year-old youth.  Because of the youth's mental health needs, she was placed in residential treatment.

¶ 3    Mother made a no-fault admission, and the juvenile court adjudicated the youth dependent or neglected.  The court adopted a treatment plan for mother which it later amended upon the Department's request.

¶ 4    The Department eventually moved to terminate the parent-child legal relationship.  Following a hearing, the juvenile court terminated mother's parental rights.

## II.    Termination Criteria and Standard of Review

¶ 5    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the

conduct or condition of the parent is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 6     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support."  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  We review de novo the juvenile court's legal conclusions, including its determination as to whether the Department satisfied its reasonable efforts obligation.  *See id.*; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

¶ 7     It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

### III.    Reasonable Efforts

¶ 8    Mother contends that that the juvenile court erred by finding that the Department engaged in reasonable efforts to rehabilitate her and reunify the family.  We disagree.

### A.    Applicable Law

¶ 9    Before a court may terminate parental rights under section 19-3-604(1)(c), the Department must make reasonable efforts to rehabilitate parents and reunite families.  §§ 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h), C.R.S. 2024.  "Reasonable efforts" means "the exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114), C.R.S. 2024.

¶ 10    Services provided in accordance with section 19-3-208 satisfy the reasonable efforts requirement.  § 19-1-103(114).  The services that "must be available and provided" as determined by individual case planning include, among others, screenings, assessments, home-based family and crisis counseling, information and referral services to assistance resources, family time, and placement services.  § 19-3-208(2)(b).  Additional services may be required if funding is available, including, as relevant here, transportation and family support services.  § 19-3-208(2)(d).

¶ 11    To evaluate whether a department made reasonable efforts, the court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). Whether a department made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 35. The parent is ultimately responsible for using the services provided to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

## B.    Analysis

¶ 12    Mother argues the Department failed to provide necessary services by "taking a year and a half to request family therapy . . . followed by a several month delay [and] only offer[ing] one therapist who [mother] did not feel comfortable using." But the record reflects that the Department made numerous referrals for family therapy, however, mother did not engage in other services to enable the treatment providers to accept the referral:

- The caseworker first submitted a referral to North Range Behavioral Health four months after the adjudication. North Range declined the referral because they did not feel qualified to address the family's history of trauma and sexual abuse.
- The caseworker identified another potential family therapy provider, Flynn Counseling, but it also declined the referral because mother needed to first engage in individual therapy and "parental coaching classes such as non-offending parent or informed supervision."
- After filing the motion to amend the treatment plan, but before the hearing on the motion, the Department identified a fourth family therapy provider, Sovereignty Counseling. Sovereignty Counseling indicated that family therapy would not be in the child's best interest if mother did not complete parenting classes first.
- The caseworker testified that if mother had completed other services to which she was referred, the treatment providers would have felt more comfortable providing family therapy.

¶ 13    Mother also declined one of the referrals for family therapy. Approximately eleven months before the termination hearing, the caseworker contacted the youth's individual therapist at her residential placement who agreed to provide family therapy. But mother objected, believing that having the same therapist provide both individual and family therapy created a conflict of interest.

¶ 14    Mother next contends that "[a]fter the case had been pending for approximately a year and a half the Department asked to amend the treatment plan to add parent coaching and parenting classes . . . when it was clear those services should have been part of the initial treatment plan." But the record shows that the Department attempted to engage mother in these services prior to moving to amend the treatment plan:

- The caseworker testified that the Department offered a parenting coach through Specialized Alternatives for Youth (SAFY) a year before the court amended the treatment plan. The caseworker encouraged mother to engage with SAFY, who offered services to address the concerns that led North Range to decline the referral for

family therapy.  SAFY contacted mother numerous times, but she declined their services.

- Seven months before the treatment plan was amended, the Department offered parenting classes for "parents who had partners who abused children (non-offending parent class)."  The caseworker completed a referral to Aspen Counseling for this non-offending parent class.  But Aspen Counseling did not hear from mother after reaching out to her, and it subsequently closed the service.

- A few months later, the caseworker offered to have Flynn Counseling contact mother regarding the non-offending parent class.  Mother did not respond to this offer.

- Five months before the treatment plan was amended, the Department offered trust-based relational interaction (TBRI) as well as "virtual family therapy with parent support" through Flynn Counseling.  Mother did not respond to this offer either.

¶ 15    During this time, the caseworker attempted to contact mother and her legal team to "request[] an update on her willingness to

complete a non-offending parent class or TBRI classes," but mother did not respond. The caseworker also emailed mother a link to attend classes virtually, but again did not receive a response. Ultimately, the Department moved to amend the treatment plan because mother would not engage in services.

¶ 16 Mother also asserts that she "suffered from a seizure disorder and was unable to drive the several hours for an in person visit" with the youth, but the Department "only offered to reimburse [mother] if she used another form of transportation." The juvenile court found that the Department offered services related to mother's seizures, but mother "also declined those services." The record supports the court's findings.

¶ 17 The caseworker testified that mother never signed a release of information to allow the Department to obtain information regarding her seizures. Even without this information, the Department attempted to offer services and solve the related transportation problems:

- The caseworker placed a referral for Creative Nursing "to assist with . . . anything [mother] would need for her

seizures . . . they tried to reach her five different times and were unsuccessful.  She declined the services."

- The Department offered to reimburse mother for mileage or for Uber fares.

- The caseworker testified that she also "offered to do what's called a funds request for the Department to either get [mother's] rent paid or vehicle repairs or monthly housing bills paid.  So . . . she could take the funding that she did have, put that aside and make a trip to Grand Junction."  But mother never provided the caseworker with information necessary to submit a funds request.

- The caseworker offered to pay to have mother's vehicle repaired, which would have required three estimates, but mother provided no estimates.

- Because the youth was in a qualified residential treatment facility, the caseworker suggested a Medicaid taxi.

¶ 18    In sum, the record supports the juvenile court's finding that the Department "made reasonable efforts to effectuate the treatment

plan," including making referrals and putting services in place, but mother ultimately "declined all of those services." *People in Interest of A.V.*, 2012 COA 210, ¶ 12 (a court may consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts).

## IV. Treatment Plan Compliance

¶ 19 Mother next contends that the juvenile court erred when it found that she did not substantially comply with her treatment plan. We discern no basis for reversal.

## A. Applicable Law

¶ 20 A treatment plan is successful if it renders a parent fit. *People in Interest of C.A.K.*, 652 P.2d 603, 611 (Colo. 1982). Partial compliance, or even substantial compliance, may not result in a successful plan that renders the parent fit. *People in Interest of D.M.W.*, 752 P.2d 587, 588 (Colo. App. 1987). It is a parent's responsibility to ensure compliance with, and the success of, the treatment plan. *People in Interest of A.H.*, 736 P.2d 425, 428 (Colo. App. 1987).

## B. Analysis

¶ 21 The juvenile court adopted a treatment for mother which required her, among other things, to (1) cooperate and maintain contact with the Department; (2) obtain parenting skills and attend family time; (3) maintain stable housing and employment; and (4) address mental health issues by completing an evaluation and attending recommended treatment. The amended treatment plan required mother to also (1) complete non-offending parent classes; (2) engage in parent coaching; (3) participate in trauma informed parenting classes; (4) take an informed supervision class; and (5) complete a psychological evaluation.

¶ 22 In determining that mother had not complied with her treatment plan, the juvenile court found that mother did not comply with "a number of objectives" especially "with regard to some of the parenting objectives." The court acknowledged that mother "had been very consistent with the family time" but found that "a lot of the parenting time remained hostile" and that mother and the youth "did not progress." Furthermore, the court found that mother (1) never engaged with SAFY to receive help with multi-generational trauma; (2) declined both the non-offending parenting class and

11

TBRI; (3) did not achieve housing or financial stability; and (4) did not adequately address her mental health because she never completed an evaluation or therapy.

¶ 23    To the extent mother asserts that she complied with her treatment plan because she had stable housing and income, this was never confirmed.  The caseworker testified that mother lived with maternal grandmother, but mother would not let the caseworker see the house to see if it was appropriate for the youth.  Mother remained unemployed throughout the case and the caseworker was concerned that mother was unable to provide financially.

¶ 24    Mother further contends that she maintained contact with the Department and other professionals.  The caseworker acknowledged that mother was "pretty consistent" in maintaining contact.  But as analyzed above, at least two service referrals were closed because mother did not respond to the providers and mother did not respond to many of the caseworker's offers for additional services.

¶ 25    Mother also contends that because of her treatment plan compliance, "reunification with her child was appropriate."  But she admitted that returning the youth home was not an option "without

the family therapy." As analyzed above, family therapy never began because mother did not engage in prerequisite services required by her treatment plan, such as parenting classes or coaching. And without family therapy, family time never progressed beyond therapeutically supervised virtual visits.

¶ 26 Additionally, the caseworker testified that mother's mental health prevented her from caring for the youth. In particular, mother struggled to regulate her emotions during family time. Given the youth's needs, the caseworker opined, it was important for mother to be "engaged in therapy regarding trauma, therapy regarding understanding her daughter and her needs as well as her own needs." Mother attended five or six individual therapy sessions but she never provided a mental health evaluation or a psychological evaluation and did not sign appropriate releases to allow the caseworker to monitor mother's progress.

¶ 27 Because the juvenile court's findings regarding mother's lack of compliance with her treatment plan are supported by the record, we decline to disturb its determination.

V.    Disposition

¶ 28 We affirm the judgment.

13

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.