24CA1971 Peo in Interest of LSM 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1971
City and County of Denver Juvenile Court No. 23JV30343
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.S.M., a Child,

and Concerning J.A.R.,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Katie McLoughlin, Acting City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    J.R. (father) appeals the judgment terminating his parent-child legal relationship with L.S.M. (the child).  We affirm.

## I.    Background

¶ 2    The Denver Department of Human Services (the Department) filed a petition in dependency or neglect after the then-one-year-old child ingested fentanyl.  The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for father.  The treatment plan required father to, among other things, (1) address substance use; (2) develop a supportive and safe relationship with the child; (3) cooperate with the Department; (4) obtain a stable home environment; and (5) demonstrate legal stability.

¶ 3    Father was in custody for much of the case.  Approximately two months after the petition was filed, he was incarcerated in Denver County on a child abuse charge and later transferred to Broomfield County.  Father was sentenced and released to community corrections but absconded from the facility shortly thereafter.  Three weeks later, he was arrested and placed in the Denver City jail, where he remained for the duration of the case.

1

¶ 4    The Department moved to terminate father's parent-child legal relationship with the child.  Following a hearing, the juvenile court granted the motion and terminated father's parental rights.

## II.    Termination of Parental Rights

### A.    Termination Criteria and Standard of Review

¶ 5    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) an appropriate treatment plan has not been reasonably complied with or has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts.  *People in Interest of L.M.*, 2018 COA 57M, ¶ 17.  We review the court's factual findings for clear error, but we review its legal conclusions based on those facts de novo.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  The credibility of witnesses, sufficiency, probative value, and weight of the evidence, as well as the inferences and conclusions

drawn from the evidence are matters within the discretion of the juvenile court. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

## B. Reasonable Efforts

¶ 7 Father argues that the juvenile court erred by concluding that the Department made reasonable efforts to reunify the family. We disagree.

### 1. Preservation

¶ 8 The Department and the guardian ad litem dispute preservation because father did not challenge the reasonableness of the Department's efforts before the termination hearing. *Compare People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services before the termination hearing), *with People in Interest of S.N-V.*, 300 P.3d 911, 914-18 (Colo. App. 2011) (holding that a parent's failure to object to services does not bar appellate review of a reasonable efforts finding). But we need not determine whether father was required to preserve his argument because even if we assume he preserved it, or was not required to, we discern no basis for reversal.

## 2. Applicable Law

¶ 9 In deciding whether to terminate parental rights under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunify them with the child. § 19-3-604(2)(h). A parent's incarceration does not excuse a department from making reasonable efforts. *See* § 19-3-508(1)(e), C.R.S. 2024 (effective January 1, 2024). When the department learns of a parent's incarceration, it must communicate with the facility where the parent is held regarding the requirements of the parent's treatment plan and provide information to the court detailing the services and treatment available to the parent at that facility. § 19-3-508(1)(e)(I)-(III). If the caseworker is unable to determine any treatment or services available to the parent, they must still report their efforts to obtain such information. § 19-3-508(1)(e)(III).

## 3. Analysis

¶ 10 First, father argues that the Department failed to comply with section 19-3-508(1)(e)(III) by not detailing the services and

treatment available to him in each of its submitted court reports. That provision provides as follows:

> If, *after the dispositional hearing*, the child's parent becomes continuously incarcerated in . . . a jail for more than thirty-five days, then the caseworker assigned to the case, upon knowledge of incarceration, shall provide information that details the services and treatment available to a parent at the facility or jail where the parent is incarcerated or the caseworker's efforts to obtain the information at the next scheduled court hearing.

§ 19-3-508(1)(e)(III) (emphasis added).

¶ 11 Father became continuously incarcerated in July 2023, *before* the dispositional hearing was held the following November and *before* the statute went into effect on January 1, 2024. Given this timing and the plain language of the provision, it does not appear that the caseworker was obligated to provide information about the services available to father while he was in jail in the early months of 2024. But then father was released to community corrections in April 2024 and reincarcerated in late May. Arguably, the caseworker had to comply with the statute at that time because father became "continuously incarcerated" again and that incarceration occurred "after the dispositional hearing." *Id.* Still, it

is unclear when the caseworker had "knowledge of [that re]incarceration" to trigger an obligation to comply. *Id.*

¶ 12 Even assuming section 19-3-508(1)(e)(III) applies to this case, it makes no reference to written reports as father asserts. *See UMB Bank, N.A. v. Landmark Towers Ass'n, Inc.*, 2017 CO 107, ¶ 22 (In construing a statute, "we apply words and phrases in accordance with their plain and ordinary meanings."). Rather, it requires a caseworker to "provide information that details the services and treatment available to a parent at the facility or jail where the parent is incarcerated or the caseworker's efforts to obtain the information at *the next scheduled court hearing*." § 19-3-508(1)(e)(III) (emphasis added).

¶ 13 We acknowledge that the caseworker did not provide information regarding the services and treatment available to father, nor did he report his efforts to obtain that information, at the first hearing after the statute took effect. But father was arrested again on May 28, 2024, and although the juvenile court held a permanency planning hearing later that same morning, it is not reasonable to expect the caseworker to have known of father's arrest, communicated with the facility where he was being detained,

6

and reported to the court at that hearing. The next hearing was the termination hearing, at which the caseworker reported the required information to the court. So it appears the caseworker complied with the statute.

¶ 14    Even assuming that the caseworker failed to *timely* provide the information, we perceive no error in the court's reasonable efforts finding because the caseworker engaged in efforts to discover services available to father during his incarceration and ultimately reported that information to the court. Father does not articulate any prejudice from the allegedly delayed report. The caseworker's efforts included (1) communicating with the Denver jail liaison; (2) visiting father during his incarceration; (3) establishing virtual family time; and (4) attempting to contact the liaison for the Broomfield jail and father's community corrections case manager. Father's assertion that the caseworker's efforts were insufficient because he only made "a single attempt" to talk to the jail liaison is unsupported by the record. The caseworker testified that he was "in contact" with the Denver jail liaison regarding programming available to father and that they were working to set up a family meeting before father was transferred to another facility.

¶ 15    Second, father argues that, aside from family time services, the caseworker made no efforts to provide services to him during his incarceration.  But as mentioned above, the caseworker testified about his attempts to engage with the jails for the provision of services to father, as well as father's engagement in some services.  The record also shows that there were limitations to the caseworker's ability to arrange services for father during his incarceration, including (1) an inability to identify the Broomfield liaison; (2) a lack of information from the Denver liaison regarding available programs; and (3) the substance abuse evaluator's inability to go to the jail to complete the evaluation.

¶ 16    Third, father argues that section 19-3-508(1)(e)(I) required the Department to communicate with the jail regarding his treatment plan objectives.  True, the record does not reflect that the caseworker specifically communicated with the facilities regarding father's treatment plan objectives.  But as discussed above, the record reflects the caseworker's efforts to ascertain any treatment or services available to father during his incarceration.  And father testified regarding the programs and classes he completed while incarcerated.  Father has not established that had the caseworker

informed the facilities of father's treatment plan objectives, any additional treatment or services would have become available to him.

¶ 17    For these reasons, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate father and reunite him with the child.

## C.    Treatment Plan Compliance and Fitness

¶ 18    Father also asserts that the juvenile court erred by finding that he had not reasonably complied with his treatment plan and remained unfit.  We discern no basis for reversal.

### 1.    Applicable Law

¶ 19    The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required the government's intervention.  *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006).  A treatment plan is successful if it either renders a parent fit or corrects the conduct or condition that led to state intervention.  *People in Interest of C.A.K.*, 652 P.2d 603, 611 (Colo. 1982).

¶ 20    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care.

*D.P.*, 160 P.3d at 353.  Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions.  *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 21    If a child is under six years old at the time the petition in dependency or neglect is filed, the court "shall not find" that a parent has reasonably complied with a court-approved treatment plan if the parent (1) exhibits the same problems addressed in the treatment plan without adequate improvement and (2) is unable or unwilling to provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental health needs and conditions.  § 19-3-604(1)(c)(I)(B).

## 2.    Analysis

¶ 22    The juvenile court found that father "failed to reasonably comply with [his] . . . court-ordered treatment plan[]," was not "a fit parent," and was not "likely to become fit in a reasonable time period."  We conclude that the record supports these findings.

¶ 23    As described above, father's treatment plan contained provisions regarding his substance use, relationship with the child,

communication with the Department, and stability in housing and legal matters. The caseworker testified that father (1) did not complete a substance abuse evaluation or any sobriety monitoring; (2) only had four, half-hour visits with the child during the case; (3) lacked a source of income; (4) did not have any available housing options; and (5) was reincarcerated after absconding from community corrections. Although father maintained contact with the caseworker and attended some family time visits, those efforts did not render him a fit parent. *See People in Interest of D.M.W.*, 752 P.2d 587, 588 (Colo. App. 1987) (partial, or even substantial, compliance may not result in a successful plan that renders the parent fit). Ultimately the caseworker opined that father's circumstances were worse at the time of the termination hearing than when the petition was filed. *See* § 19-3-604(1)(c)(I)(B).

¶ 24 Father argues that he was reasonably compliant with his treatment plan because he (1) maintained communication with the Department, as discussed above; (2) completed courses and programs in jail; and (3) consistently attended family time. We are not persuaded.

¶ 25    Father's assertion that he complied with his treatment plan by completing a substance use recovery program and a parenting course lacks support in the record.  Specifically, the caseworker explained that the substance use evaluation required by father's treatment plan typically recommended sobriety monitoring and longer treatment than what father received from the program he completed.  And there was no evidence that father completed any sobriety monitoring either through the program or otherwise during the case.  Regarding the parenting course, while the caseworker noted that it might have benefited father, until he could demonstrate the learned skills in caring for the child, "it [didn't] contribute to the completion of [his] treatment plan."

¶ 26    Furthermore, the record does not support father's claim that he engaged in "consistent" family time.  A mandatory protection order prevented contact between father and the child for the first ten months of the case.  A modification of the order allowed contact shortly before father's transfer to community corrections where in-person visits likely would have been possible.  But father lost that opportunity when he absconded from the community corrections facility for three weeks and was subsequently

reincarcerated. This series of events greatly complicated the caseworker's ability to arrange family time for father. By the termination hearing, father had only had four virtual visits with the child.

¶ 27     Finally, father argues that the juvenile court should have considered his treatment plan compliance "in light of his incarcerated status" and that it improperly based its fitness finding on his incarceration. True, the juvenile court said that father was unlikely to become fit within a reasonable time "because [he was] facing another five years . . . in the justice system." But the court also focused on the "period of time . . . where he . . . went to a halfway house in the community correction system." Had father remained there, the caseworker believed father would have had greater access to services to help him meet the treatment plan objectives. But father left the halfway house without permission and was returned to jail as a result. *See People in Interest of A.H.*, 736 P.2d 425, 428 (Colo. App. 1987) (it is the parent's responsibility to assure compliance with, and the success of, treatment plan objectives); *see also People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008) (A parent's noncompliance with a treatment plan

generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness."). The caseworker opined that the concerns regarding father's fitness were not solely due to his incarceration but also related to his ongoing criminal activity, instability, and history of substance use. Thus, although the record shows that father's incarceration during the case informed the court's decision, it was not the sole reason for the court's finding of unfitness. *See K.D.*, 139 P.3d at 703 (The court did not err when it "carefully considered how [the parent's] continued incarceration affected his fitness and his corresponding ability to meet [the child's] needs within a reasonable time.").

¶ 28 Because the record supports the juvenile court's determinations regarding father's treatment plan compliance and unfitness, we discern no error.

### III. Disposition

¶ 29 The judgment is affirmed.

JUDGE J. JONES and JUDGE YUN concur.