The PEOPLE of the State of Colorado in the Interest of B. J. D., Adjudged to be a Dependent and Neglected Child,

and

El Paso County Department of Social Services, Petitioner-Appellee,

and concerning,

B. D., Respondent-Appellant,

and

K. D., Respondent.

No. 79CA0770.

Colorado Court of Appeals, Div. II.

Feb. 26, 1981.

Jeffrey H. Zelmanow, Colorado Springs, for petitioner-appellee.

Murphy, Morris & Susemihl, Stanley C. Kent, Colorado Springs, for respondent-appellant B. D.

Ann K. McLaughlin, guardian ad litem.

SMITH, Judge.

This is an appeal by B.D. from a decree terminating her parental rights relative to B.J.D., her daughter. We order the decree set aside.

B.D. is the natural mother of B.J.D., who was born on May 7, 1974. On March 18, 1975, B.D. voluntarily placed the child with the El Paso County Department of Social Services because she was concerned that K.D., the natural father, would physically abuse the child.

In July 1975, B.D. was placed in the Colorado State Hospital in Pueblo following a suicide attempt. B.D. was, at that time, diagnosed as a paranoid schizophrenic, and this illness in addition to continuing personal problems prevented her from regaining custody of the child. In November 1975, the court decreed the child to be dependent and neglected, but ordered the return of custody of the child to B.D. Because of her immediate personal circumstances, B.D. did not take custody of the child at this time, but continued a program of visitation. Custody has continued with the Department of Social Services, and the foster placements up to the present time.

Another attempt to return custody of the child to B.D. was aborted when B.D. was involuntarily hospitalized. Immediately thereafter, a second petition in dependency and neglect was filed by the Department of Social Services.

On July 25, 1978, the child was again adjudged to be dependent and neglected based on the fact that she was not living with her parents, § 19–1–103(20)(e), C.R.S. 1973 (1978 Repl. Vol. 8). On August 28, 1978, a treatment plan was approved by the court directing B.D. to do certain things in order to demonstrate that she was entitled to the return of her child.

Visitation between B.D. and the child was terminated by B.D.'s caseworker, without notice to or permission of the court, on November 28, 1978. This action was based on the caseworker's view that visitation was not productive for the child. This was done despite the fact that the court had specifically ordered in the treatment plan that supervised visitation should take place. On January 19, 1979, B.D. filed a motion for visitation, which motion was denied at a hearing on February 8, 1979.

On May 14, and May 17, 1979, a hearing was held on the question of termination of the parent-child legal relationship. As a

result of that hearing, the court, on May 31, 1979, terminated the parent-child relationship between B.D. and the child.

On appeal, B.D. contends, *inter alia*, that: (1) the allegations justifying termination of a parent-child relationship must be proven by clear and convincing evidence, rather than merely a preponderance of the evidence; and (2) that the trial court's conclusions (a) that the treatment plan was unsuccessful; and (b) that the respondent's mental condition is of such a nature as to render her unlikely within a reasonable time to provide reasonable care for her child, are not supported even by a preponderance of the evidence.

## A. Burden of Proof

B.D. contends that the burden of proof in proceedings to terminate parental rights should be clear and convincing evidence. We disagree.

This court has stated on numerous occasions that the termination of parental rights is a decision of the utmost gravity and seriousness, *People in the Interest of C. A. K.*, Colo.App. (annc'd 12–31–1980); *People in the Interest of S. S. T.*, 38 Colo.App. 110, 553 P.2d 82 (1976); *People in the Interest of K. S.*, 33 Colo.App. 72, 515 P.2d 130 (1973), to be considered in light of the General Assembly's express policy to preserve the biological family unit whenever prudently possible. *See* § 19–1–102(1), C.R.S. 1973 (1978 Repl. Vol. 8).

Termination of the parent-child legal relationship is governed by § 19–11–101 et seq., C.R.S.1973 (1978 Repl. Vol. 8) of the Childrens Code, specifically § 19–11–105, C.R.S.1973 (1978 Repl. Vol. 8). However, the Childrens' Code does not specify the quantum of proof required to terminate the parent-child relationship. Nevertheless, C.R.J.P. 1 states that:

"Proceedings are civil and where not governed by these rules or the procedures set forth in Title 19, C.R.S.1973, as amended, shall be conducted according to Colorado Rules of Civil Procedure."

Therefore, we must apply § 13–25–127, C.R.S.1973, which declares that the burden of proof in any civil action shall be by a preponderance of the evidence.

B.D.'s contention that the quantum of proof required should be higher in termination cases is an issue properly addressed to the General Assembly. In the absence of a specific directive by the General Assembly that courts utilize the clear and convincing standard, we are compelled to apply the preponderance standard. *See People in the Interest of C. A. K., supra.*

## B. Treatment Plan

B.D. next contends that the treatment plan approved by the court, even though inappropriate, was reasonably complied with by her. We agree.

At the termination hearing, the trial court found that B.D. had not reasonably complied with its prescribed treatment plan, and that the treatment plan had not been successful. The treatment plan required that B.D.: (1) assume responsibility for maintaining her own home; (2) either enroll in school or actively seek and find employment; (3) make some monetary contribution for the child's foster care; (4) participate in gradual integration of the child into B.D.'s own home by cooperating in the structured visitation program; (5) maintain at least bi-weekly contact with the Department of Social Services; and (6) continue therapeutic treatment.

B.D. argues that if the treatment plan was unsuccessful, it was because it was inappropriate. Likewise, she argues that if she did not completely comply it was because such compliance was impossible. B.D. asserts that the treatment plan failed to take into consideration: (1) That she was pregnant and thus had a forthcoming responsibility for a new-born child; (2) That she did not have a car or a driver's license, and therefore, in order to visit the child at the foster home four miles distant, she had to rely upon bus service which was largely unavailable during the scheduled times; (3) That because of her pregnancy, her only source of support was public assistance and that this provided no excess funds with which she could contribute toward child support or obtain further education.

Despite these inherent problems with compliance, B.D. attempted to comply with the treatment plan. She established and maintained her own home and maintained contact with the Social Services Department. She participated in regular visitations with her child until such visitation was unilaterally terminated by the Department of Social Services in November 1978. Furthermore, B.D. continued therapy until the treatment plan was amended to allow her to terminate such therapy.

The trial court conceded that the plan failed to take into consideration B.D.'s pregnancy, lack of transportation, and lack of income, but nevertheless, ruled that since B.D. did not object to the institution of the treatment plan, and had not sought to have the plan modified, she was precluded from later arguing its inappropriateness.

To justify the appropriateness of a treatment plan upon some theory of estoppel, or failure to object to its terms, makes no sense. To terminate the legal relationship between a child and its parent based upon non-compliance with, or failure of, a plan whose appropriateness was determined in that manner is unconscionable. The sole purpose of the treatment plan, which *must* be tried before termination, is to reunite a parent and child in the kind of relationship which will be beneficial to both, under conditions which are designed to eliminate those factors which necessitated society's intrusion into the family in the first instance. Thus, the appropriateness of such a plan can only be measured by examining the likelihood of its success in accomplishing this purpose. A plan inappropriate under these criteria does not become appropriate because the parent fails to object to it. Here, the requirements of the plan were not realistic in light of the existing facts. Non-compliance was virtually assured and lack of success was a foregone conclusion. The drastic and permanent step of termination cannot be premised upon non-compliance with, or failure of, such a plan.

### C. *Fitness of B. D.*

The trial court's conclusion that B.D.'s mental condition was of such duration and nature as to render her unlikely within a reasonable time to provide reasonable care for the child is not supported by the evidence.

At the termination hearing, the testimony was uncontroverted that B.D. had been out of therapy for over one year, and that no psychological medications had been prescribed since January of 1978. A psychiatrist who examined B.D. in May of 1979, testified that, in his opinion, B.D. was in good psychiatric health and that she was capable of "parenting" a child. He advised the court that he was impressed with B.D.'s motivation to be a mother and her seemingly caring and loving attitude toward the child. B.D.'s mother testified that B.D. was successfully raising her new-born child and that the problems B.D. had encountered in the past were largely absent.

The People presented testimony from former caseworkers and former treating doctors. Although these witnesses presented an unfavorable prognosis regarding B.D.'s capabilities as a parent, none of the doctors had experienced any contact with B.D. for more than a year preceding the termination hearing, and the caseworkers' opinions were based more on their observations of the child than of B.D. It was uncontroverted that B.D. had made dramatic progress in the previous year with regard to resolving any mental problems she may have had in the past. Under these circumstances, we conclude that the trial court's ruling regarding the continuing nature of B.D.'s unfitness as a parent is not supported by the evidence.

In order to terminate the parent-child legal relationship of B.D. and B.J.D., the People had the burden of proving, *inter alia*, both of the following: (1) "That an appropriate treatment plan approved by the court has not been reasonably complied with by the parent or parents, or has not been successful" and (2) "that the conduct or condition of the parent or parents is unlikely to change within a reasonable time." Section 19–11–105(1), C.R.S.1973 (1978 Repl. Vol. 8). We conclude that this

burden was not met and that therefore there was no basis for termination of the parent-child relationship under the statute.

Accordingly, the decree terminating the parent-child relationship is set aside, and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

VAN CISE, J., concurs.

BERMAN, J., concurs in part and dissents in part.

BERMAN, Judge, concurring in part and dissenting in part.

I agree with the result reached by the majority. However, I disagree with and dissent from part A of the majority opinion dealing with the burden of proof required in proceedings to terminate parental rights. As I have stated previously, I am of the firm opinion that, in such proceedings, the Colorado and United States Constitutions require the proof to be judged according to the clear and convincing evidence standard. *People in the Interest of C. A. K.*, Colo.App. (1980) (ann'd December 31) (Berman, J., specially concurring). See also my dissent in *People in the Interest of J. L. W.* (Colo. App. # 79CA0322, October 9, 1980) (not selected for official publication) (cert. denied February 2, 1981). Denial of certiorari, of course, does not imply approval of an opinion. *Menefee v. City & County of Denver*, 190 Colo. 163, 544 P.2d 382 (1976).

This court explicitly recognized the appropriate standard of proof when it held, in *People in the Interest of S. S. T.*, 38 Colo. App. 110, 553 P.2d 82 (1976), that "the power of the state to sever the ties between parent and child should be exercised with extreme care and only when the evidence *clearly establishes the necessity of so doing.*" (emphasis added) This is no more than a different way of saying "clear and convincing," or that the "evidence must· establish that the truth of the contention to be proved is 'highly probable.'" *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 fn. 3 (1979); or of "convincing clarity," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) as cited in *Di-Leo v. Kolthow*, Colo., 613 P.2d 318 (1980). I would adhere to the rule established in *People in the Interest of S. S. T., supra.*