707 P.2d 1046 (1985)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
IN the INTEREST OF: C.B. and T.B., Children,
And Concerning: S.H., Respondent-Appellant.
No. 84CA0084.
Colorado Court of Appeals, Div. III.
June 6, 1985.
Rehearing Denied July 25, 1985.
Certiorari Denied October 21, 1985.
*1047 Michael Schottelkotte, Delta, for petitioner-appellee.
Gregg Helmsing, Delta, Guardian ad Litem for Children.
Briscoe, Stanway, Clay & Dodson, P.C., Michael R. Dodson, Delta, for respondent-appellant.
TURSI, Judge.
S.H. appeals from an order of the trial court terminating her parent-child relationship with her sons, C.B. and T.B. On appeal, she contends that the trial court erred in finding that the treatment plan was appropriate, that it was unsuccessful, that she was an unfit parent, and that the conduct or condition rendering her unfit was unlikely to change within a reasonable time. We disagree and therefore affirm.
In November 1982 S.H. was hospitalized for an apparent suicide attempt. On the basis of an admitted petition, C.B. and T.B. were adjudicated dependent and neglected and placed in foster care. See § 19-1-103(20), C.R.S. (1978 Repl.Vol. 8). In December 1982 the People moved to terminate S.H.'s parental rights. The motion included a three-part treatment plan for S.H. She agreed to the plan in January 1983, and it was approved by the court.
The plan required S.H. to attend weekly one-hour sessions for therapy, marriage counseling, and parenting skills; to attend two day-long sessions per week for group therapy, vocational counseling, assertiveness training, and nutrition and hygiene education; and to submit to two home visits per month by a caseworker.
Initially, S.H. substantially complied with the treatment plan, made progress, and the boys were returned to her custody in April 1983. In May 1983 S.H.'s husband suffered a massive heart attack and was hospitalized in Grand Junction, Salt Lake, and finally Denver. Although she continued to attend the counseling sessions and allowed the home visits, the social services department noted a return to the conditions which had precipitated the first request for termination of her parental rights.
S.H. moved four times in four months; did not clean the house, the children, or herself; and did not provide adequate nutrition or naps for the children. C.B.'s developmental disability worker testified that S.H. made repeated attempts to draw the worker's attention to herself and her needs. S.H. also displayed inappropriate expectations for her older son. T.B. was three, but she asked him to remember dates for her, asked him to provide therapy to his brother, and discussed her desire to commit suicide with him.
*1048 S.H. left the children with her sister while she visited her husband in the hospital in Salt Lake. The sister was unable to care for the children and passed them on to equally unreceptive persons. On S.H.'s return from Salt Lake, the caseworker suggested that the children be placed in foster care temporarily. S.H. agreed.
In July 1983 the treatment plan was determined to be a failure. At the termination hearing in October 1983, the trial court found that S.H. had made a reasonable effort to comply with the treatment plan, that the treatment plan was unsuccessful, and that S.H.'s emotional disorders rendered her an unfit parent. Further, the trial court found that a continuation of the parent-child relationship was likely to result in serious physical and emotional injury to the children and a continuous deprivation of their basic physical and emotional needs throughout their crucial formative years. The trial court determined that these critical findings were supported by clear and convincing evidence and terminated S.H.'s parental rights.

I.
The court may order a termination of the parent-child relationship if it finds, by clear and convincing evidence, that the children have been adjudicated dependent or neglected and an appropriate treatment plan, approved by the court, has not been complied with or has not been successful, that the parent is unfit, and that the conduct or condition of the parents is unlikely to change within a reasonable time. People in Interest of A.M.D., 648 P.2d 625 (Colo.1982).
The purpose of a treatment plan is "to reunite a parent and child in the kind of relationship which will be beneficial to both, under conditions which are designed to eliminate those factors which necessitated society's intrusion into the family in the first instance," and the appropriateness of the plan can be measured by examining the likelihood of success in accomplishing this purpose. People in Interest of B.J.D., 626 P.2d 727 (Colo.App.1981).
In this case, society's intrusion into S.H.'s family was brought on by her self-destructive behavior and the neglect of her children. The treatment plan provided both individual and group therapy for S.H. An effort was made to reach other manifestations of S.H.'s problems by providing training and counseling in specific areas. Under these circumstances, the trial court properly found that the treatment plan was appropriate.
S.H. made an effort to comply with the treatment plan, but the plan did not have the desired effect. As described above, S.H. continued to have suicidal impulses; she did not clean the house, the children, or herself and provided a diet of only junk food for the children and herself. Eventually, she admitted that the children were too great a burden during her husband's illness.
S.H. argues that her husband's illness was the key element in her inability to reach the goals of the treatment program. His illness was clearly an unsettling factor, but the record depicts a stormy marriage in which instability was the norm. S.H. frequently was unable to behave in accord with the goals of the treatment plan.
A plan is considered successful if it improves conditions or corrects unfit parental conduct. Here, there is ample clear and convincing evidence in the record to sustain the trial court's determination that the treatment plan was unsuccessful, and thus, that ruling may not be disturbed on review. People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).

II.
S.H. contends that, before the court declared her an unfit parent, an effort should have been made to treat her for the "insight disorder," identified by the psychologist called at trial. We perceive no error.
S.H. had been adjudicated dependent or neglected herself some ten years before these proceedings. The suicide attempt which brought her children to the *1049 court's attention was not her first. The disarray of her life, her rages, her efforts to gain attention for herself, and her failure to recognize her children's needs are set forth by testimony and documents in the record. The psychologist further testified that "insight disorders" are generally not treatable.
Emotional illness, mental illness, or mental deficiency of such duration or nature as to render the parent unable or unwilling to meet the ongoing physical, mental, and emotional needs of the child is an adequate ground for determining parental unfitness. See § 19-11-105(2)(a), C.R.S. We find that the trial court acted within its proper discretion in giving "primary consideration to the physical, mental, and emotional conditions and needs of the children." See § 19-11-105(3), C.R.S.
The order terminating the parental right of S.H. in her two children is affirmed.
STERNBERG and METZGER, JJ., concur.