25CA0333 Peo in Interest of ALO 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0333
Douglas County District Court No. 24JV30042
Honorable Ben L. Leutwyler, III, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.L.O. and A.V.M., Children,

and Concerning B.O.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Jeffrey A. Garcia, County Attorney, Zoe Laird, Assistant County Attorney, Castle Rock, Colorado, for Appellee

Nicole Savino, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect action, B.O. (mother) appeals the judgment entered on a jury's verdict adjudicating two-year-old A.L.O. and ten-year-old A.V.M. (collectively, the children) dependent and neglected.  She also appeals the juvenile court's dispositional order adopting a treatment plan for her.  We affirm.

## I.     Background

¶ 2     The Douglas County Department of Human Services received a referral with concerns about A.V.M.'s truancy and aggressive behaviors.  The Department opened a voluntary case with mother and continued working with the family as part of a truancy case that started two months later.  During the voluntary case, the Department became concerned about mother's substance use and implemented a safety plan for her to be supervised while with the children.

¶ 3     Six months after the voluntary case commenced, the Department filed a petition in dependency and neglect, raising concerns about mother's substance dependence and failure to follow the safety plan during the voluntary case.  Mother requested an adjudicatory jury trial.  After a two-day trial, the jury returned special verdicts finding both children dependent and neglected

1

under sections 19-3-102(1)(b) and (c), C.R.S. 2024.  The juvenile court then adopted a treatment plan for mother.

## II.    Adjudication

¶ 4    Mother first contends that there was insufficient evidence to support the adjudication of the children as dependent and neglected.  We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 5    The purpose of an adjudicatory hearing is to determine whether the children are dependent or neglected under section 19-3-102 and whether that status warrants intervention by the government.  *People in Interest of N.G.*, 2012 COA 131, ¶ 39.

¶ 6    An adjudication may not enter without proof, by a preponderance of the evidence, that the child is dependent or neglected.  *People in Interest of J.G.*, 2016 CO 39, ¶¶ 15, 53.  As relevant here, a child is dependent or neglected when (1) the child lacks proper parental care due to the parent's actions or omissions or (2) the child's environment is injurious to his welfare. § 19-3-102(1)(b), (c).  Section 19-3-102 requires proof of only one condition for an adjudication.  *See People in Interest of S.M-L.*, 2016

COA 173, ¶ 29, *aff'd on other grounds sub nom.*, *People in Interest of R.S. v. G.S.*, 2018 CO 31.

¶ 7  In determining whether the evidence is sufficient to sustain an adjudication of dependency or neglect, we review the record in the light most favorable to the prevailing party, and we draw every inference "fairly deducible" from the evidence in favor of the jury's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury. *Id.* We will not disturb the jury's findings if the record supports them, even if reasonable people might arrive at different conclusions based on the same facts. *Id.; People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).

## B.  Analysis

¶ 8  Mother contends that her children were not dependent or neglected while in her care because (1) she left a domestically violent relationship with the father more than a year before the adjudicatory hearing; (2) she met the children's basic needs while

3

they were in her care; and (3) A.V.M. exhibited extreme behaviors that were beyond the control of a fit parent.

¶ 9    Although these facts appear to be undisputed, we reject mother's claim because the jury heard other evidence that could have supported the children's adjudications, and we cannot reweigh the evidence. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 10    First, the caseworker testified that mother's failure to supervise the children or follow through with necessary services for A.V.M. created an unsafe environment for both children during the voluntary case.

¶ 11    Second, mother and the caseworker testified about mother's substance dependence. The caseworker testified that the Department was concerned about mother's substance dependence due to the results of monitored sobriety testing and mother's lack of engagement with recommended substance dependence treatment. . Although mother denied substance use at the time of the adjudicatory hearing, she admitted to a relapse involving cocaine that began before the voluntary case opened. An expert in forensic toxicology opined that the hair follicle test submitted by mother

demonstrated either ongoing use of cocaine or a large amount of use at one time.

¶ 12     Finally, mother and the caseworker testified that mother had been unavailable to care for the children during the three months leading up to the adjudicatory trial. Mother testified that she experienced "a manic break" and became homeless. She also testified that while she was missing, she was unable to provide consent for emergency mental health treatment needed by A.V.M. and declined to participate in family time with either child, leading to a "horrible" impact on both children. The caseworker testified that after mother stopped attending family time, the caseworker was unable to locate her until the week before the hearing, when she appeared in custody.

¶ 13     Based on the foregoing evidence, the jury could reasonably infer that the children were each dependent or neglected under one or more of the statutory criteria presented at the time of the adjudication. *See* § 19-3-102(1)(b), (c). Accordingly, we will not disturb the jury's verdict.

### III. Treatment Plan

¶ 14 Next, mother contends that the treatment plan adopted by the juvenile court during disposition was not appropriate because it failed to provide her with mental health and domestic violence support. We are not persuaded.

#### A. Relevant Law and Standard of Review

¶ 15 "[T]he purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family." *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2024; *People in Interest of K.B.*, 2016 COA 21, ¶ 13.

¶ 16 We measure the appropriateness of a treatment plan based on its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). While the focus of the plan is to address the child's needs

and any identified safety concerns, the plan's requirements must also be realistic given the existing facts. *See People in Interest of B.J.D.*, 626 P.2d 727, 730 (Colo. App. 1981); *see also People in Interest of A.H.*, 736 P.2d 425, 427 (Colo. App. 1987). Such facts necessarily include a parent's individual circumstances and ability to access treatment services. *B.J.D.*, 626 P.2d at 730.

¶ 17 We review a juvenile court's order adopting a treatment plan for an abuse of discretion. *People in Interest of M.W.*, 2022 COA 72, ¶ 32. A court abuses its discretion when its actions are manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Id.* at ¶ 12.

### B. Analysis

¶ 18 Mother first contends that her treatment plan was inadequate because it lacked any component addressing her mental health. At the dispositional hearing, the children's guardian ad litem proposed adding a mental health element. But mother did not appear at the dispositional hearing and had not been in touch with the parties since her release from jail on bond the previous month. The juvenile court decided against adding a mental health component but directed the parties to consider adding one once mother was in

communication with the Department and her counsel. This approach appropriately considered mother's circumstances and inability to access services unknown to her while she was out of contact. *See B.J.D.*, 626 P.2d at 730. Mother, through counsel, did not object to this course of action or take any position on adding a mental health objective to the treatment plan. *See People v. Ujaama*, 2012 COA 36, ¶ 37 (An issue is unpreserved for review when, among other things, "no objection or request was made in the trial court."); *see also People in Interest of T.E.R.*, 2013 COA 73, ¶ 30 (failing to take a position on an issue presented to a juvenile court is insufficient to preserve it for review).

¶ 19     Next, mother contends that the juvenile court erred by adopting a "standard-issue co-parenting element" that left her "vulnerable to father's attempts to manipulate, control and further victimize her." At the dispositional hearing, mother asked the court to modify the co-parenting objective to "specifically require a co-parenting class that accounts for domestic violence . . . with service providers that are trained in domestic violence dynamics." The court declined to change the language of the objective because it already included (1) treatment through an identified provider

working with a domestic violence perspective; (2) a requirement that communication between mother and father occur only through the Talking Parents online application; and (3) compliance with a no-contact order. Accordingly, the court found that the existing objective was not "unfair to [mother] or . . . impos[ing] an unreasonable expectation."

¶ 20 The record supports the court's findings. The caseworker testified that the Department considered domestic violence dynamics when it asked mother, a survivor of domestic violence, to engage in co-parenting with father. The caseworker testified that the identified provider for the co-parenting class was specifically chosen because it used a domestic violence framework, and the course was designed to alleviate power and control dynamics in co-parenting situations. The course was offered virtually and required both parents to receive "the exact same co-parenting information" to eliminate any "gray areas" of understanding. This testimony belies mother's contention that the Department proposed a "standard-issue" element and ignored the domestic violence dynamic by requiring mother to engage in co-parenting. Given this evidence, the court's finding that the co-parenting element was

appropriate was not manifestly arbitrary, unreasonable, or unfair. We therefore discern no abuse of the court's discretion adopting that element.

¶ 21 While mother now suggests that the treatment plan should have included a separate provision to support her as a victim of domestic violence, at the hearing she asked the court *not* to adopt a separate domestic violence objective. We therefore will not consider mother's argument. *People in Interest of N.A.T.*, 134 P.3d 535, 537 (Colo. App. 2006) (an appellate court will not consider an issue when a parent took the opposite position in the juvenile court).

## IV.   Disposition

¶ 22 The judgment is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.