25CA0852 Peo in Interest of CG 10-30-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 25CA0852
Jefferson County District Court No. 24JV30191
Honorable Lindsay VanGilder, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of C.G. and C.W., Children,

and Concerning C.W.,

Appellant.

_____

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

_____

Kimberly Sorrells, County Attorney, Claire M. Czajkowski, Assistant County
Attorney, Golden, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado,
for Appellant

¶ 1     C.W. (mother) appeals the judgment adjudicating C.G. and C.W. (the children) dependent or neglected and the dispositional order, which required her to comply with a treatment plan.  We affirm.

## I.     Background

¶ 2     The Jefferson County Division of Children, Youth and Families filed a petition in dependency or neglect that raised concerns about mother's substance dependence and mental health.  Mother requested an adjudicatory jury trial.  However, she failed to appear on the trial date.  Instead, mother's counsel asked the juvenile court to enter mother's no-fault admission.  That same day, the court received a written admission signed by mother and her counsel.  Based on the signed admission, the court adjudicated the children dependent or neglected.

¶ 3     About a month later, the court held a contested dispositional hearing.  After taking testimony from the Division's caseworker, mother, and father, the court entered a dispositional order including a treatment plan for mother.

## II. Analysis

¶ 4    Mother contends that the juvenile court erred by (1) accepting her admission to the petition without ensuring she understood the consequences; (2) adopting an inappropriate treatment plan; and (3) admitting a family services plan as an exhibit at the dispositional hearing.  We consider and reject these contentions in turn.

### A. Adjudication

¶ 5    Mother first contends that the juvenile court erred by accepting her written admission because the court failed to provide a comprehensive advisement or ensure that she understood the consequences of the admission.

¶ 6    Mother concedes that these issues are unpreserved.  Still, she urges us to address her claims under the miscarriage of justice exception to the preservation requirement.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.

¶ 7    We may consider an unpreserved issue in a dependency or neglect case for the first time on appeal if a juvenile court error involves a miscarriage of justice.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 21 ("[G]iven the constitutional nature of parental

rights, we will recognize a miscarriage of justice exception for review of unpreserved errors."). The miscarriage of justice exception has a high bar and narrow scope. *See id.* at ¶¶ 23-24. We recognize the exception only in "rare cases, involving unusual or special circumstances, . . . to prevent an unequivocal and manifest injustice." *People in Interest of E.R.S.*, 2019 COA 40, ¶ 38.

¶ 8 Mother claims that "the manifest injustice [in her case] is the [Division]'s intrusion into the parent-child relationships." But the Division's intrusion is not an unusual or special circumstance. Every adjudication results in "intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). Mother does not assert, and we cannot discern, any unusual or special circumstances surrounding her written admission or the later adjudication of the children in this case. To the contrary, mother concedes that she and her counsel signed the written advisement indicating her understanding of the petition and a broad array of rights. She then asserts the court failed to ensure that her understanding was correct. However, she points us to nothing in the record supporting that supposition.

¶ 9     We therefore decline to address the issues concerning mother's admission and the later adjudication of the children as dependent or neglected. *See People in Interest of T.E.R.*, 2013 COA 73, ¶ 30 (generally, issues not raised in the trial court will not be considered on appeal).

¶ 10    Mother also claims, without developing any factual or legal support, that she received ineffective assistance of counsel in connection with her admission. Because mother does not develop this argument, we will not consider it. *People in Interest of S.Z.S.*, 2022 COA 105, ¶ 29.

### B.     Dispositional Order

¶ 11    Mother next contends that the juvenile court erred by adopting a treatment plan that was not appropriate and by admitting the family service plan as an exhibit at the dispositional hearing. We disagree.

### 1.     Relevant Law and Standard of Review

¶ 12    When a child is adjudicated dependent or neglected, the juvenile court must fashion a treatment plan for the parent. *People in Interest of K.B.*, 2016 COA 21, ¶ 11; *see also* § 19-3-508(1)(e)(I), C.R.S. 2025 (providing that, unless the proposed disposition of a

dependency and neglect action is termination of the parent-child legal relationship, the court "shall approve an appropriate treatment plan"). The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2025; *K.B.*, ¶ 13.

¶ 13 An appropriate treatment plan must "address the safety concerns identified during the assessment of the family." *K.B.*, ¶ 14. This is true even when the adjudication of the children was not necessarily predicated upon those particular concerns. *People in Interest of C.L.S.*, 934 P.2d 851, 856 (Colo. App. 1996) (the specific ground on which a child is found to be dependent and neglected does "not restrict the juvenile court's discretion to formulate a treatment plan in the best interests of the child"); *see also People in Interest of L.S.*, 2023 CO 3M, ¶ 35 (holding that the

court need only find by a preponderance of the evidence that a component is appropriate to include in the treatment plan).

¶ 14 While the focus of a plan is to address the child's needs and any identified safety concerns, the plan's requirements must also be realistic given the existing facts. *See People in Interest of B.J.D.*, 626 P.2d 727, 730 (Colo. App. 1981). Such facts necessarily include a parent's individual circumstances and ability to access treatment services; when the requirements of a treatment plan are not realistic given the existing facts, "[n]on-compliance [is] virtually assured and lack of success [is] a foregone conclusion." *Id.*

¶ 15 We review a treatment plan adopted by the juvenile court for an abuse of discretion. *People in Interest of M.W.*, 2022 COA 72, ¶ 32. A court abuses its discretion when its actions are manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Id.* at ¶ 12.

### 2. Appropriate Treatment Plan

¶ 16 Mother claims that the treatment plan was not appropriate because (1) she was not capable of frequent substance testing in Jefferson County; (2) it did not require the Division to provide her with transportation assistance; (3) it required her to repeat

assessments that she had already completed; and (4) it improperly prohibited her legal use of marijuana. We address each claim in turn.

### a. Reasonable Travel Requirements

¶ 17 Mother contends that the evidence presented at the dispositional hearing made clear that she was not capable of traveling to Jefferson County eight to ten times a month to submit mouth swabs.

¶ 18 During the assessment, mother moved from Jefferson County to Larimer County. She relied on public transportation to travel to family time and court hearings in Jefferson County. Mother testified that it was difficult to get to monitoring appointments given the transportation issues. She said that she would have preferred four to six tests per month.

¶ 19 The juvenile court considered the request but declined to reduce the proposed testing frequency. It found that the required frequency of mouth swabs was necessary to prevent undetected substance use and to obtain a baseline for mother's sobriety. It noted that if mother maintained a period of demonstrated sobriety and compliance, it would consider ordering less frequent testing.

¶ 20    We can't say on this record that the juvenile court abused its discretion by denying mother's request for less frequent testing. While she testified that traveling by public transportation was difficult, she did not indicate that the difficulty was insurmountable. Moreover, the court didn't merely disregard mother's concern. Instead, it grounded its decision in preventing undetected substance use.

¶ 21    Regardless, the treatment plan itself only required mother to submit to substance monitoring. It didn't require her to travel the fifty miles between her home at the time of the dispositional hearing and Jefferson County to complete that monitoring. To the contrary, the treatment plan didn't specify a location for the monitoring. Further, the Division is required to make available the services deemed necessary and appropriate by the treatment plan in a manner appropriate to support the parent's completion of the treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011); § 19-3-208(2)(d)(I), C.R.S. 2025; *see* § 19-3-217, C.R.S. 2025. The record reflects no reason for the court to assume, at the time it adopted the treatment plan, that the Division would

fail to make mouth swabs available in the city where mother resides if it had to do so.

### b. Specific Transportation Assistance Requirements

¶ 22 Similarly, we disagree with mother's broad assertion that the treatment plan should have required specific transportation assistance. As indicated above, there was no indication that mother could only receive substance abuse monitoring sixty miles from her home. And she testified that she participated in many of her treatment services virtually. Likewise, she testified that she participated in family time in the city where she resided. Accordingly, nothing in this record indicates that the treatment plan was not appropriate when the court adopted it. *See People in Interest of A.N-B.*, 2019 COA 46, ¶ 26 ("[T]he Division's later efforts to implement the plan have no bearing on whether or not the plan was appropriate."). If anything, her contention that "comprehensive transportation assistance was necessary in this case" is a question better suited to the juvenile court's ongoing reasonable efforts analysis, not our consideration of the appropriateness of her treatment plan.

### c. Support for Substance Abuse Treatment

¶ 23 Mother asserts that the juvenile court erred by adopting requirements for substance abuse treatment, a relapse prevention plan, and a recovery plan "without any basis in the evidence." We disagree.

¶ 24 At the dispositional hearing, mother testified that she completed an evaluation and was "already doing certain things." She testified that she objected to developing a relapse prevention plan in particular because "the micro-managing . . . is also unnecessary."

¶ 25 The court found, with record support, that there were ongoing concerns about mother's substance dependence that rendered the substance dependence objectives reasonable and appropriate. The court also found that mother only submitted one urinalysis test, which was positive for methamphetamine, marijuana, and alcohol. The court modified several treatment plan objectives at mother's request, including removing the requirement that mother attend community sobriety meetings. But the court further found that "the primary concern is that mother undergo a substance evaluation and comply with the recommendations." And while the

10

court acknowledged mother's testimony that she had previously completed an evaluation, it also noted the caseworker's testimony that mother's provider denied having any record of an evaluation. The court found that mother needed to complete another evaluation unless mother's provider furnished the evaluation to the Division.

¶ 26    Given the conflicting testimony about what treatment, if any, mother had engaged in and about mother's positive urine screen for illegal substances, we discern no abuse of the court's discretion in requiring mother to engage in substance abuse treatment and develop a relapse prevention plan and a recovery plan. *See People in Interest of A.J.L.*, 243 P.3d 244, 256 (Colo. 2010) (when the evidence conflicts or depends on credibility determinations, a reviewing court may not reweigh the evidence or substitute its judgment for that of the juvenile court merely because there might be evidence supporting a different result).

### d.    Marijuana Use

¶ 27    Mother contends that the juvenile court improperly prohibited her legal use of marijuana. Mother asserts that she objected to abstaining from marijuana.

¶ 28     But the record shows that mother made a different request to the juvenile court.  At the dispositional hearing, mother objected "in part" to abstaining and testified that she treated physical and mental health concerns with marijuana.  Mother testified that, in a prior safety plan, the Division permitted her to use marijuana "given the medical professional's referral."  Based on mother's request, the court modified the treatment plan and ordered that marijuana "be considered as prescription medication" and that mother could provide a prescription for marijuana, along with prescriptions for any other medications, to the Division.  We therefore discern no basis for reversal.  *See People v. Ujaama*, 2012 COA 36, ¶ 37; *see also M.B.*, ¶ 14 ("[L]ike other civil actions, [in] dependency and neglect proceedings . . . , generally appellate courts review only issues presented to and ruled on by the lower court.").

### 3.     Admission of the Family Service Plan was not Preserved

¶ 29     Mother contends that the family service plan admitted as an exhibit at the dispositional hearing did not meet the requirements of section 19-1-107(2) and (2.5), C.R.S. 2025, because the family service plan (1) contained extraneous information about mother and

(2) lacked the required "list of services available to families that are specific to the needs of the child and the child's family and that are available in the community where the family resides." § 19-1-107(2.5). However, this contention is not properly before us because mother did not raise these objections in the juvenile court. Instead, mother conceded that the family service plan was the "kind of report" permitted by section 19-1-107 and objected only to the time that would be required to cross-examine the caseworker who wrote the report. An issue is unpreserved for review when, among other things, "no objection or request was made in the trial court" or "an objection or request was made in the trial court, but on grounds different from those raised on appeal or on unspecific grounds which would not have alerted the trial court to the issue of which the [party] now seeks review." *Ujaama*, ¶ 37 (citations omitted); *see M.B.*, ¶ 14. Because mother raised a different objection in the juvenile court than the one now raised, we will not address her contentions about the family service plan.

## III.   Disposition

The judgment is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.

13