25CA1997 Peo in Interest of JC 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1997
Arapahoe County District Court No. 23JV289
Honorable Shay Whitaker, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Je.C. and Ja.C., Children,

and Concerning T.W. and L.C.,

Appellants.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE ASHBY*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Ron Carl, County Attorney, Tamra White, Assistant County Attorney, Aurora, Colorado for Appellee

Sheena Knight, Counsel for Youth, Brighton, Colorado, for Je.C. and Ja.C.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado for Appellant T.W.

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado for Appellant L.C.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, L.C. (father) and T.W. (mother) appeal the judgment terminating their parent-child legal relationships with Je.C. and Ja.C. (the children).  We affirm.

I.     Background

¶ 2     In April 2023, the Arapahoe County Department of Human Services (the Department) received a referral that father had dementia, believed that mother and the children were strangers holding him against his will, and physically harmed the children when they tried to stop him from leaving the home.  As a result, the Department provided ongoing support to the family.  During a meeting with the caseworker in August 2023, the children reported concerns about mother's substance use, anger, and physical aggression.  After receiving a report that mother had threatened the children's lives, the Department filed a petition in dependency or neglect and sought temporary custody of the children.  The juvenile court granted temporary custody to the Department, who placed the children with maternal grandmother.  But three weeks later, based on concerns about grandmother's substance use, the Department transferred the children to foster care where they remained.

¶ 3     The juvenile court then adjudicated the children dependent and neglected and adopted treatment plans for mother and father. In December 2024, the Department moved to terminate both parents' parental rights. Following a multi-day hearing spanning several months, the juvenile court granted the motion and terminated mother's and father's legal relationships with the children.

## II. Termination Criteria and Standard of Review

¶ 4     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the children were adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 5     Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 8 (applying the same standard of review to whether a department of human services satisfied its obligation to make

2

reasonable efforts).  We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## III.    Reasonable Efforts

¶ 6    Father contends that the juvenile court erred by finding that the Department made reasonable efforts to reunify him with the children when the Department failed to make reasonable accommodations for his disability.  We disagree.

## A.    Applicable Law

¶ 7    Before a court may terminate parental rights under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h), C.R.S. 2025.  "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114).

¶ 8    Appropriate services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114). The services that "must be available and provided" as determined by individual case planning include, among others, screenings,

assessments, home-based family and crisis counseling, information and referral services to available assistance resources, family time, and placement services.  § 19-3-208(2)(b).

¶ 9     Additionally, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, requires a public entity, such as a county department of human services, to make reasonable accommodations for qualified individuals with disabilities.  *See People in Interest of C.Z.*, 2015 COA 87, ¶¶ 11-12.  Thus, departments and juvenile courts must account for and, if possible, make reasonable accommodations for a parent's disability when providing rehabilitative services.  *People in Interest of S.K.*, 2019 COA 36, ¶ 34.  And, a juvenile court must consider whether a department made reasonable accommodations under the ADA in determining if it made reasonable efforts to rehabilitate the parent.  *Id.*

¶ 10    Whether a parent is a qualified individual with a disability under the ADA is a case-by-case determination.  *Id.* at ¶ 21.  Before a department can be required to provide reasonable accommodations under the ADA, it must know that the individual has a qualifying disability, either because that disability is obvious

or because someone has informed the department of the disability. *Id.* at ¶ 22. Thus, while a department must provide appropriate screenings and assessments of a parent, the parent is responsible for disclosing information regarding his disability. *Id.* at ¶ 21. And a parent should also identify any modifications that he believes are necessary to accommodate his disability. *Id.*

¶ 11 A parent is ultimately responsible for utilizing the services provided by a department to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). In determining whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

### B. Additional Background

¶ 12 In October 2023, father filed a notice asserting that the ADA applied based on his diagnoses of vascular dementia and multiple myeloma cancer. At that time, father did not request any specific

5

accommodations, stating only "[s]hould [he] require any accommodations or modifications, [his] counsel [would] confer . . . and motion the [c]ourt." Two months later, father moved to a nursing home facility where he stayed for the remainder of the case.

¶ 13 In March 2024, the Department moved the juvenile court for a finding that no appropriate treatment plan could be devised for father, asserting that "[d]ue to [father's] diagnosis and inability to care for himself and the minor children, [the Department did] not believe that an appropriate treatment plan [could] be [de]vised to address [his] unfitness as a parent." In response, father's counsel moved for a finding that the Department failed to make reasonable efforts to develop a treatment plan and explore reasonable accommodations for his disability.

¶ 14 The court set a contested hearing to resolve the motions. Father's witness, qualified as an expert in treatment planning and accommodations for individuals with disabilities, testified that, even though father would not be able to become a custodial parent because of his medical conditions, he could participate in services at his nursing home, attend family time, and maintain an ongoing relationship with the caseworker through continued monthly

contact. The court found it undisputed that a treatment plan could not be devised to rehabilitate father and render him a primary parent. But the court found that there could be a treatment plan which allowed father continued contact with the children while the case proceeded. Thus, the court adopted a treatment plan for father requiring him to (1) maintain caseworker contact; (2) attend family time and interact with the children in a nurturing and affectionate manner; (3) sign releases of information pertaining to his medical care; and (4) participate in physical therapy as recommended by his nursing home facility. Father's counsel did not request any modifications to the treatment plan or any specific accommodations for his disability.

## C.    Analysis

¶ 15    The juvenile court concluded that, understanding father's condition, status, and treatment plan terms, the Department made reasonable efforts.

¶ 16    The record reflects that the Department (1) provided supervised family time for father at his nursing home and scheduled phone contact for the children and father; (2) spoke to two of father's medical social workers and their director;

(3) investigated dementia-specific resources for the children;

(4) offered the children the opportunity to speak to father's medical social worker about father's condition; (5) investigated transportation options for father to attend family time in the community; (6) remained in communication with father and his team; (7) enrolled the children in therapy; and (8) encouraged the children to attend therapy specific to father's condition.

¶ 17    Nevertheless, father asserts that the Department failed to make reasonable efforts and reasonably accommodate his disability because the caseworker did not provide mechanisms to enhance his relationship with the children, engage in more frequent contact with him, or proactively reach out to his providers.  But, as detailed above, the record reflects that the caseworker maintained contact with father and his team and made resources available to the children to maintain a relationship with father and process his illness.  Moreover, nothing in the record suggests that, had the caseworker communicated with father more frequently or provided the children with additional dementia-specific resources, it would have made a difference in the outcome of the case — particularly considering father's diagnosis and its undisputed impact on his

ability to parent the children. Following the termination hearing, father acknowledged, through his counsel's closing argument, that father's treatment plan "was never designed to rehabilitate him as a parent, because he cannot be, based on terminal illness." *See People in Interest of C.C.*, 2022 COA 81, ¶ 20 ("An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'") (citation omitted); *see also* § 19-3-507(1)(c), C.R.S. 2025 ("If one or both of the parents have a disability, reasonable accommodations and modifications, as set forth in the [ADA] . . . , are necessary to ensure the treatment plan components are accessible."); *People in Interest of B.J.D.*, 626 P.2d 727, 730 (Colo. App. 1981) ("The sole purpose of the treatment plan . . . is to reunite a parent and child in the kind of relationship which will be beneficial to both, under conditions which are designed to eliminate those factors which necessitated society's intrusion into the family in the first instance.").

¶ 18    Thus, based on the totality of the circumstances, we discern no error in the juvenile court's conclusion that the Department made reasonable efforts.

IV.  Fit Within a Reasonable Time

¶ 19    Mother asserts that the juvenile court erred by finding that she could not become a fit parent within a reasonable time because, in her view, she made substantial progress in her treatment plan objectives.  We are not persuaded.

A.  Applicable Law

¶ 20    An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care.  *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007).  Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs.  *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).  A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness."  *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 21    In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the

parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. But a "reasonable time" is not an indefinite time. *Id.*

### B. Analysis

¶ 22      Mother's treatment plan required her to (1) maintain caseworker contact; (2) complete a substance abuse evaluation to determine the most appropriate course of treatment; (3) cooperate with all requested urinalysis (UA) tests; (4) maintain and budget legal income to meet her financial obligations; (5) complete a mental health evaluation and comply with all treatment recommendations; (6) attend family time; and (7) provide a safe, stable, and suitable residence for the children.

¶ 23      The juvenile court found that, although mother had made some progress on her treatment plan, she did not reasonably comply with the plan overall and continued to exhibit the same concerns that originally necessitated the Department's involvement with the family. Therefore, the court found mother to be unfit. The

court further determined that mother could not become fit within a reasonable time because she had not progressed beyond supervised family time or demonstrated her sobriety or the ability to manage her anger over the course of the two-year-long case.

¶ 24 The record supports the juvenile court's findings. The Department asked mother to submit to random, weekly UAs. But mother submitted only a small percentage of her required UAs during the last year of the case. Mother's therapist expressed concern that mother was not complying with required UA testing and that mother had sent a threatening email to Ja.C.'s guardian ad litem one week before the final day of the termination hearing. The therapist agreed that mother "still ha[d] a lot of work to do" regarding impulse control, coping skills, and anger management.

¶ 25 The caseworker testified that, over the course of the two-year-long case, mother had not maintained stable employment, shown sustained sobriety, or demonstrated the ability to use coping skills or tools to manage her anger. Therefore, the caseworker opined that mother was unlikely to become fit if given more time.

¶ 26 Even so, mother asserts that the juvenile court erred because she made "significant improvements" in managing her mental

health needs, consistently attended family time, and had a strong relationship with the children. To be sure, the court recognized that mother had done some work during the case, and it commended her ongoing participation in mental health treatment and family time. Nevertheless, the court found, with record support, that mother was unlikely to become fit within a reasonable time based, in large part, on her lack of progress in the key areas of substance use and anger management. It is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court. *See id.* at ¶ 29. And because the record supports the court's findings, we have no basis to disturb them. *See id.* We therefore reject mother's assertion.

## V.    Less Drastic Alternatives

¶ 27    Both parents contend that the juvenile court erred by finding that there were no less drastic alternatives to termination. We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 28    The consideration and elimination of less drastic alternatives are implicit in the statutory criteria for termination. *A.M.*, ¶ 40. In considering less drastic alternatives, a juvenile court must give

primary consideration to the children's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. A juvenile court may also consider, among other things, (1) whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's fitness to care for the child's needs, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) whether the child is bonded with the parent, *see People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); and (3) whether an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *see People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 29    For a less drastic alternative to be viable, it must do more than adequately meet the child's needs; it must be in the child's best interests. *A.M.*, ¶ 27. If a juvenile court considers a less drastic alternative but finds instead that termination is in the children's best interests, it must reject the alternative and order termination. *Id.* at ¶ 32.

¶ 30    "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Thus, when a juvenile court considers less drastic alternatives but

14

instead finds that termination is in the children's best interests, we are bound to affirm the decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.   Analysis

¶ 31    The juvenile court considered less drastic alternatives to termination but found that none of them would meet the children's physical, emotional, and mental health needs.  In so finding, the court considered the foster parents' preference for adoption, the children's wishes, mother's ongoing struggles with substance use and anger management, and any benefit to the children of continuing their relationships with the parents.

¶ 32    The record supports these findings.  The caseworker reported that visiting father was difficult for the children, in part, due to his declining short-term memory and lack of consistent engagement with the children during visits.  And mother continued to involve the children in inappropriate conversations during family time.  The caseworker testified that she and the children's guardian ad litem discussed the option of an APR with the children several times over the course of the proceedings.  But the children consistently expressed feeling unsafe when discussing an APR and potential

return to mother's home. And, due to his dementia and terminal illness, father acknowledged throughout the case that he could not be a custodial parent for the children. Overall, the caseworker opined that there were no less drastic alternatives to termination and that termination was in the children's best interests.

¶ 33　Moreover, the caseworker testified that she had discussed various permanency options with the foster parents on multiple occasions, and the foster parents preferred termination and eventual adoption over an APR. *See People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011); *see also People in Interest of P.D.*, 580 P.2d 836, 838 (Colo. App. 1978) (noting that a court cannot enter an APR to an unwilling party who is not the child's parent). Contrary to mother's arguments, the lack of direct testimony from the foster parents and there being no evidence that the foster parents would have had "the children removed from their home if they were not immediately allowed to adopt" do not, on their own, require the court to find that an APR was a viable less drastic alternative. Rather, as detailed above, in assessing whether an APR was viable the court properly considered numerous factors together with the foster parents' preference for adoption. *See Z.M.*, ¶ 29.

¶ 34 True, as both parents point out, an APR would have preserved the children's relationships with the parents. But that is just one factor for the court to consider in analyzing whether any less drastic alternatives are viable. *See A.R.*, ¶ 38. And after considering the evidence presented, including testimony from the family time supervisor regarding the children's bond and relationship with both parents and father's two expert witnesses regarding the benefits of an APR over termination and adoption, the juvenile court determined that termination was in the children's best interests. The parents' arguments essentially ask us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29.

¶ 35 Because the record supports the juvenile court's finding that there was no less drastic alternative to termination, which was in the children's best interests, we must accept its determination. *See B.H.*, ¶ 80.

## VI. Disposition

¶ 36 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.

17